IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 24, 2015 Session

## CLIFFORD SWEARENGEN v. DMC-MEMPHIS, INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-0057-2011     John R. McCarroll, Jr., Judge**

**No. W2014-00724-COA-R3-CV – Filed April 2, 2015**

This is an appeal from the trial court's grant of a motion to dismiss Appellant's medical malpractice action[1] against defendants named in Appellant's amended complaint filed more than one year after the cause of action accrued.  The trial court found that Appellant's claims against the additional parties were time barred because the amended complaint adding these parties was not filed within ninety days of the original answer asserting comparative fault against non-parties.  Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Ronald Krelstein, Germantown, Tennessee, and Steven Markowitz, Memphis, Tennessee, for

---

[1] The legislature amended Tenn.Code Ann. § 29–26–121 to replace the term "medical malpractice" with "health care liability" effective April 23, 2012. See Act of April 23, 2012, ch. 798, 2012 Tenn. Pub. Acts.  The complaint at issue here was filed Dec. 27, 2011. In this opinion, we will refer to the version of the statute in effect on the date the complaint was filed.

the appellant, Clifford Swearengen.

Jonathan Martin and Joshua Hillis, Memphis, Tennessee, for the appellee, DMC-Memphis, Inc. d/b/a Delta Medical Center.

Joseph M. Clark and Samantha E. Bennett, Memphis, Tennessee, for the appellees, Prism Medical Group, PLC, Michael Johnson, M.D., and Jeffrey Stricklin, NP.

## OPINION

### I. Factual and Procedural History

In December 2011, Clifford Swearengen (Appellant) filed a medical malpractice action arising from medical treatment he received at DMC-Memphis, Inc. d/b/a Delta Medical Center (DMC). Mr. Swearengen's complaint named DMC as the sole defendant. In his complaint, Mr. Swearengen alleged that, on or about September 30, 2010, he entered DMC's emergency room seeking treatment and that DMC: (1) failed to advise him that his symptoms were indicative of a stroke; (2) failed to perform necessary tests; (3) failed to properly diagnose his condition; and (4) failed to either properly treat him or transfer him to a facility that could properly treat him. Mr. Swearengen claimed that as a result of DMC's negligence, he suffered exacerbation of a stroke that resulted in visual and cognitive impairments and partial paralysis.

On March 1, 2012, DMC filed its answer denying the material allegations of Appellant's complaint. In paragraph 7 of the affirmative defense section of its answer, DMC stated that it "is prohibited by law to practice medicine, it does not and did not attempt to diagnose, develop a medical plan of care, perform surgery or otherwise practice medicine

2

with respect to the [Appellant]. Thus, [DMC] can have no liability for the acts alleged which involve the practice of medicine." DMC further asserted the doctrine of comparative fault as either a bar to any recovery or to diminish DMC's proportion of fault. DMC also alleged in its answer "that the physicians treating the [Appellant] were not employees of DMC. Thus, to the extent alleged in [Appellant's] complaint, DMC can have no liability for the acts alleged involving the physicians treating the [Appellant]."

On November 5, 2012, DMC filed a motion to amend its answer to allege comparative fault specifically naming these parties: Prism Medical Group, Inc., Michael Johnson, M.D., and Jeffrey Stricklin, N.P. (collectively the "Prism Appellees"). On December 6, 2012, the trial court entered an order allowing the amended answer, and DMC filed its amended answer on December 10, 2012. DMC did not file a certificate of good faith as to the Prism Appellees within thirty (30) days of alleging comparative fault against these parties in its amended answer.

On March 6, 2013, Mr. Swearengen filed an amended complaint naming the Prism Appellees as additional defendants. Thereafter, the Prism Appellees moved to dismiss the amended complaint on the ground that the Appellant's action against the Prism Appellees was barred by the statute of limitations. Specifically, the Prism Appellees argued that Mr. Swearengen did not amend his complaint to add them within ninety days of DMC's original answer as required by Tennessee Code Annotated Section 20-1-119. The Prism Appellees also asserted in their motion to dismiss that DMC failed to file a certificate of good faith as to

3

the Prism Appellees within thirty days of filing the amended answer as required by Tennessee Code Annotated Section 29-26-122(b); therefore, the Prism Appellees asserted that Appellant could not rely on the saving provisions of Tennessee Code Annotated Section 20-1-119. Lastly, the Prism Appellees argued, that by waiting ten (10) months to assert the defense, DMC waived its right to assert comparative fault against the Prism Appellees in its amended answer.

On January 14, 2014, the trial court entered an order granting the Prism Appellees' motion to dismiss, finding that DMC's original answer was sufficient to trigger the ninety-day period for adding the Prism Appellees. Initially, the trial court did not rule on the question of whether DMC's failure to file a certificate of good faith was fatal to the assertion of comparative fault, or whether DMC waited too long to amend its answer. On February 27, 2014, the Prism Appellees moved the trial court to finalize the order pursuant to Tennessee Rule of Civil Procedure 54. The following day, February 28, 2014, Mr. Swearengen filed a motion to alter or amend the order of the trial court, asking the trial court to reconsider its previous ruling and to issue a ruling on the two pretermitted issues. On March 21, 2014, Mr. Swearengen filed a supplemental motion to alter or amend the trial court's January 14, 2014 ruling citing additional authority.

On April 3, 2014, the trial court entered an order denying Mr. Swearengen's motions to alter or amend. In its order, the trial court found that an affidavit filed by Mr. Swearengen's attorney was sufficient to waive DMC's requirement to file a certificate of

4

good faith.  Additionally, the trial court held that DMC had not waived its rights to allege comparative fault by waiting ten months to file its amended answer specifically naming the Prism Appellees.  Mr. Swearengen appeals.

## II.    Issues

There are two issues for review, which we restate as follows:

1.    Whether the trial court erred in finding that the original answer of DMC properly pled the comparative fault of the Prism Appellees, thus triggering the ninety (90) day extension of the statute of limitations pursuant to Tennessee Code Annotated Section 20-1-119.

2.    Whether DMC's failure to submit a certificate of good faith within thirty days of filing its original answer under Tennessee Code Annotated Section 29-26-122(b) rendered its original allegations of comparative fault a nullity.

## III.    Standard of Review

The scope of review after the grant or denial of a motion to dismiss involves a question of law. *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696–97 (Tenn. 2002).  A motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure seeks only to determine whether the pleadings state a claim upon which relief can be granted.  Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).  In considering a motion to dismiss, the Court is required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the plaintiff. *Id.* (observing that "Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide

5

notice of the issues presented to the opposing party and court.") (internal citation omitted).

This Court's review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894-95 (Tenn. 2011). Additionally, there has been no transcript of the evidence provided pursuant to Tennessee Rule of Appellate Procedure 24(b), nor has a statement of the evidence been provided pursuant to Tennessee Rule of Appellate Procedure 24(c); therefore, the issues on appeal are before this court on the technical record only. *Baugh v. Moore*, No. M2013-02224-COA-R3-CV, 2015 WL 832589, at *3 (Tenn. Ct. App. Feb. 25, 2015).

## IV. Analysis

In Tennessee, medical malpractice actions are subject to a one year statute of limitation. *See* Tenn. Code Ann. § 29-26-116. In this case, Mr. Swearengen did not amend his complaint to add the Prism Appellees until March 6, 2013, more than one year after the alleged negligent medical treatment. It is, therefore, undisputed that Mr. Swearengen's claims against the Prism Appellees are time barred unless Mr. Swearengen establishes that he complied with the exception provided by Tennessee Code Annotated Section 20-1-119 which in relevant part states as follows:

> (a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the

6

plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault, either:

(1) Amend the complaint to add the person as a defendant pursuant to Tenn. R. Civ. P. 15 and cause process to be issued for that person; or

(2) Institute a separate action against that person by filing a summons and complaint. If the plaintiff elects to proceed under this section by filing a separate action, the complaint so filed shall not be considered an original complaint initiating the suit or an amended complaint for purposes of this subsection (a).

(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.

Tenn. Code Ann. Section 20-1-119 (2009). We have previously described this statute as providing a "grace period" in which a plaintiff may add a defendant to a lawsuit when the applicable statute of limitations has expired. *Romine v. Fernandez*, 124 S.W.3d 599, 603 (Tenn. Ct. App. 2003).

In this case, we begin our analysis by considering whether DMC's original answer triggered the running of the ninety (90) day grace period. Mr. Swearengen asserts that DMC's answer to the original complaint was insufficient to trigger the ninety (90) day extension of the statute of limitations. Specifically, Mr. Swearengen argues that because the Prism Appellees were not named in DMC's original answer filed on March 1, 2012, the

answer does not meet the standard set by Tennessee Rule of Civil Procedure 8.03 and Tennessee case law.

Tennessee Rule of Civil Procedure 8.03 governs affirmative defenses. In relevant part, the Rule states that "a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative fault (including the identity **_or_** description of any other alleged tortfeasors)." Tenn. R. Civ. P. 8.03 (emphasis added). Although DMC's original answer did not name specific physicians or parties who treated Mr. Swearengen, Mr. Swearengen's complaint references and describes with particularity negligent treatment by physicians. Paragraph 23 of the complaint alleges:

> [DMC] failed to advise the [Appellant] of the nature of the symptoms which he complained of, failed to perform necessary tests and examinations, failed to **_provide correct diagnosis_**, failed to properly care for, or to transport the Plaintiff to a facility capable of properly treating the [Appellant's] condition.

(emphasis added). Paragraph 24 of the complaint alleges:

> [DMC] acted in a negligent and careless manner inconsistent with the recognized standards acceptable for physicians and/or hospitals providing medical services/care ..., and [DMC] failed to exercise or possess the degree of skill or learning ordinarily exercised by the **_average physician practicing his or her specialty_** . . . .

(emphasis added). Paragraph 27 of the complaint alleges:

> Under the doctrine of respondeat superior, master/servant and/or joint venture, agent/master, **_negligent acts and/or omissions on the part of [DMC's] doctors_** and any person providing care to the [Appellant] at Delta Medical Center were imputable to [DMC]

8

(emphasis added).  Paragraph 39 of the complaint alleges:

> As a direct and proximate result of [DMC's] failure to properly screen and treat [Appellant], Mr. Swearengen suffered an exacerbation of the stroke for which he originally sought examination and treatment.

In its answer, DMC denied the allegations of negligence asserted against it in Mr. Swearengen's complaint.  Paragraph 7 of the Affirmative Defenses section of the answer states:

> To the extent the actions alleged by the [Appellant] involve the practice of medicine as defined by T.C.A. § 68-6-204 and do not involve the practice of professional nursing as defined in T.C.A. § 63-7-103, [DMC] is prohibited by law to practice medicine, it does not and did not attempt to diagnose, develop a medical plan of care, perform surgery or otherwise practice medicine with respect to the [Appellant].  Thus, [DMC] can have no liability for the acts alleged which involve the practice of medicine.

Paragraph 9 of the Affirmative Defenses section of the answer contains a general comparative fault allegation against unnamed parties and the Appellant stating, "DMC will rely upon the doctrine of comparative fault to either bar any recovery or to diminish it in proportion to the fault attributable to the plaintiff or to other persons."  Additionally, Paragraph 14 of the Affirmative Defenses section of the answer states:

> For further affirmative defense, DMC would show that the physicians treating the [Appellant] were not employees of [DMC].  Thus, to the extent alleged in [Appellant's] complaint, [DMC] can have no liability for the acts alleged involving the physicians treating the [Appellant].

The gravamen of Mr. Swearengen's complaint is negligence in the diagnosis and

9

treatment of his stroke, and DMC's answer clearly states that it is prohibited by law from practicing medicine and that the physicians who treated Mr. Swearengen were not employees of DMC. DMC's answer further states that it did not attempt to diagnose or develop a medical plan of care for Mr. Swearengen. These statements clearly allege that the diagnosis and medical plan were the work of others not named in the original complaint.

This Court has previously addressed when and how Tennessee Code Annotated Section 20-1-119 becomes operative. In ***Romine v. Fernandez***, *supra*, Mr. Romine and his wife brought a medical malpractice action against his physician, Dr. Morris, relating to the administration of a contraindicated prescription medication. 124 S.W. 3d at 600. In his answer, Dr. Morris acknowledged that Mr. Romine was provided the medication in question, but not by Dr. Morris's order. ***Id.*** at 601. Dr. Morris also invoked the doctrine of comparative fault in the event that the Romine's allegations of negligence committed by any other defendant or third party were true. ***Id.*** Similar to the facts here, in his answer, Dr. Morris did not name anyone else as a responsible party. ***Id.*** Subsequent to the filing of Dr. Morris's answer, the Romines filed a motion to amend the complaint to add an anesthesiologist and a certified registered nurse anesthetist (CRNA) as defendants. ***Id.*** The Romines argued that they were not aware that the anesthesiologist was not a member of Dr. Morris's staff and that they could not have known who ordered the medication until Dr. Morris denied having done so. ***Id.*** Thus, it was Dr. Morris's answer, they argued, that alerted them to the additional defendants and triggered Tennessee Code Annotated Section

10

20-1-119.

In the ***Romine*** case, we held that the statements in Dr. Morris's answer were sufficient to put the plaintiffs on notice that a nonparty caused or contributed to the injuries alleged. Notably, we held that "[a]lthough Dr. Morris did not specifically state the names of [the anesthesiologist and the CRNA], Dr. Morris's answer provided 'reasonable notice of a third party claim and, coupled with the available … discovery tools, the plaintiff had more than adequate opportunity and time to discover the third party's identity and to amend their complaint to add [the anesthesiologist and the CRNA] within the ninety (90) days following the filing of Dr. Morris's answer.'" ***Id.*** at 605 (internal citations omitted).

In ***Austin v. State***, 222 S.W. 3d 354 (Tenn. 2007), the Tennessee Supreme Court addressed the issue of when an answer is sufficient to make comparative fault an issue so as to trigger the applicability of Tennessee Code Annotated Section 20-1-119. In ***Austin***, the plaintiffs were injured when their car ran through a stop sign and came to rest in a ditch. ***Id.*** at 355-56. The plaintiffs brought suit against the county, alleging several counts of negligence. ***Id.*** at 356. In its answer, the county stated that: (1) the stop sign was in a right-of-way controlled by the state; (2) the state placed and had control of the stop sign; and (3) the state was responsible for the maintenance of the stop sign. ***Id.*** It also stated that the roadway where the accident occurred was maintained by the state. ***Id.*** Relying on the county's answer, the plaintiffs filed a complaint against the state in the Claims Commission. Our Supreme Court held that if the county's answer alleged that the state caused or

11

contributed to the plaintiff's injuries, then the answer was sufficient to raise comparative fault as an issue. The Court specifically stated that comparative fault does not have to be raised as an issue following a "precise legal formula." *Id.* at 357. Rather, the Court concluded that Tennessee Code Annotated Section 20-1-119 "applied whenever a defendant's answer gives a plaintiff notice of the identity of a potential tortfeasor and alleges facts that reasonably support a conclusion that the nonparty caused or contributed to the plaintiff's injury." *Id.* at 358.

Based upon the foregoing authorities, Mr. Swearengen's argument that DMC's answer did not trigger Tennessee Code Annotated Section 20-1-119 because it did not identify the Prism Appellees by name is without merit. All of the foregoing cases note that the statute is to be construed to afford an injured party a "fair opportunity to bring before the court all persons who caused or contributed to the party's injuries." *Townes v. Sunbeam Oster Co., Inc.*, 50 S.W. 3d 446, 451 (Tenn. Ct. App. 2001). In this case, Mr. Swearengen's complaint makes specific allegations regarding acts of negligence in the diagnosis and treatment of his stroke, which acts can only be undertaken by a physician or other medical provider. DMC clearly stated in its answer that it was prohibited by law from practicing medicine and that the physicians treating Mr. Swearengen were not employed by DMC.

Accordingly, DMC's original answer filed March 1, 2012 was sufficient to raise comparative fault, to put Mr. Swearengen on notice that non-parties were potentially at fault, and to provide Mr. Swearengen more than a "fair opportunity" to identify the non-parties

who caused or contributed to his injuries. Yet, Mr. Swearengen did not amend his complaint to add the Prism Appellees until March 6, 2013, more than a year after DMC filed its original answer. In short, Mr. Swearengen did not add the Prism Appellees within ninety (90) days of DMC's answer as required by Tennessee Code Annotated Section 20-1-119. Therefore, his claim against the Prism Appellees is time-barred, and the trial court properly dismissed his claim against these parties with prejudice.

Mr. Swearengen also asserts that DMC's failure to submit a certificate of good faith within thirty (30) days of filing its original answer renders its original allegation of comparative fault a nullity. We note that this issue was not raised by Mr. Swearengen in the trial court. Generally, issues not raised in the trial court are not allowed to be raised for the first time on appeal. *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000). However, appellate courts have discretion under Tennessee Rules of Appellate Procedure 13(b) and 36(a) to consider issues that have not been properly presented in order to achieve fairness and justice. *Aaron v. Aaron,* 909 S.W.2d 408, 412 (Tenn.1995).

In regard to this issue, Mr. Swearengen argues that DMC's failure to file a certificate of good faith within thirty (30) days of its answer was ineffective to trigger the requirement to amend his complaint with the ninety (90) day grace period provided by Tennessee Code Section 20-1-119. However, Tennessee Code Section 20-1-119 and Tennessee Code Section 29-26-122 operate independently from one another. Tennessee Code Annotated Section 29-26-122 provides in pertinent part as follows:

13

(c) The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, ***upon motion***, make the action subject to dismissal with prejudice. The failure of a defendant to file a certificate of good faith in compliance with this section alleging the fault of a non-party shall, ***upon motion***, make such allegations subject to being stricken with prejudice unless the plaintiff consents to waive compliance with this section. If the allegations are stricken, no defendant, except for a defendant who complied with this section, can assert, and neither shall the judge nor jury consider, the fault, if any, of those identified by the allegations. The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.

Tenn. Code Ann. § 29-26-122 (c) (2012) (emphasis added). The unambiguous language of this statute provides that the defense of comparative fault is subject to being stricken only ***upon motion***. The record in this case reveals no motion by either the Prism Appellees or Mr. Swearengen requesting that the allegation of comparative fault raised in DMC's original answer be stricken for failure to file a certificate of good faith. Having failed to file such a motion, Appellant's argument regarding this issue is without merit.

In their brief, the Prism Appellees allege that the trial court erred when it ruled that Mr. Swearengen was not required to file a certificate of good faith as to the Prism Appellees when he filed his amended complaint naming them as defendants. Having determined that the Prism Appellees were properly dismissed by the trial court, we pretermit this issue raised by the Prism Appellees as moot.

## V. CONCLUSION

14

For the foregoing reasons, we affirm the order of the trial court. This case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Clifford Swearengen and his surety, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE